## MARTHA BROWN'S APPEAL FROM COMMISSIONERS.

New London Co., Oct. T., 1888.   PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

*B* being indebted to *K* in the sum of $6,250 for which he had given his
notes, procured the transfer to him of two policies of insurance of
$3,000 each on a mill which he had conveyed to his wife, to hold as
collateral security. *B* afterwards went into insolvency and the mill
was conveyed to his assignee. The mill having been burned, the
agent of the insurance companies claimed that the policies had be-
come invalidated by the change of title to the property insured, but
agreed that the companies should pay the full amount and take an as-
signment of *K's* claim against *B*. The companies thereupon paid *K*
the $6,000 and took an assignment of *B's* notes and presented them
against his insolvent estate and they were allowed in full by the com-
missioners. Upon an appeal by a creditor from this allowance, it was
held—

1. That if the $6,000 paid by the companies was paid on the policies, the
payment canceled so much of the amount due on the notes.
2. That the transaction must have been such a payment unless it was a
purchase of the claim of *K* with no reference to the insurance.
3. That upon all the facts it was to be regarded as a payment upon the pol-
icies and not as a purchase.

[Argued October 16th, 1888—decided January 4th, 1889.]

APPEAL from the doings of commissioners on the insol-
vent estate of Edward W. Brown in allowing a claim of
John B. Visscher against the estate; taken to the Superior
Court in New London County, and reserved, upon facts

found, for the advice of this court. The case is sufficiently stated in the opinion.

*J. M. Thayer* and *J. M. Hall*, for the appellant.

*J. Halsey* and *W. A. Briscoe*, for the appellee.

CARPENTER J. On the 4th day of September, 1885, William Tinkham of Providence conveyed to Edward W. Brown the Occum Mill property in Norwich, subject to a mortgage for $15,000 to the Norwich Savings Society. On the same day, in part consideration for this purchase, Brown executed and delivered to Tinkham, four notes, signed Brown & Co., amounting in all to $6,252.50. On the 9th day of September Brown conveyed the premises to his wife, the appellant. She procured insurance on the same for $30,000, in six companies. Three policies, for $6,000 each, were placed in the hands of the Norwich Saving Society, payable to it as its mortgage interest should appear. Two of the policies, for $3,000 each, at the request of Mr. Tinkham, made to Mr. Brown, were placed in Mr. Tinkham's hands as collateral security for Brown's indebtedness to him. The other policy for $6,000 remained with Mrs. Brown.

On the 14th of December, 1885, Brown made an assignment in insolvency, and on the same day, at the request of the assignee, he and his wife united in a quit-claim deed of the premises to the assignee. On the 23d day of December the Saving Society gave notice to one Chapman, the agent who placed all the insurance, of the transfer, inclosing the policies and requesting assent. On the 22d Mrs. Brown wrote and sent a postal card to Chapman informing him of the transfer, but sent no policy and made no request. No reply was received to either of these communications, and it does not appear that the postal card was received. Whether Tinkham gave notice in respect to the policies which he held does not appear. On the 27th day of December, 1885, all the buildings insured were destroyed by fire.

On February 17th, 1886, Chapman, acting as agent of the

insurance companies, claiming that the policies had become invalidated by the change of the title to the property without the assent of the insurance companies, made (in the words of the finding) "without the consent or knowledge of the appellant, an agreement with Tinkham that each of the insurance companies should pay to him the full amount of the policies of $3,000 each, and that in consideration thereof he should assign his claims against Brown & Co., or E. W. Brown, to the insurance companies." These sums were paid and the accounts closed on the books of the companies. By direction of the companies the claims against Brown were assigned to J. B. Visscher, who paid nothing for them, and now has no interest in them. He presented them to the commissioners, and they were allowed in full. Mrs. Brown, a creditor, appealed. The Superior Court found the above facts and reserved the case for the advice of this court.

It is apparent that Tinkham claimed that each policy was a valid claim against the company issuing it, and that Chapman in behalf of each company resisted the claim. Each company finally paid in full, taking an assignment of the notes and accounts as above stated, amounting to about $6,800.

If the amount paid by the insurance companies is to be regarded as a payment of the policies, then the amount so paid extinguished, *pro tanto*, the notes. If nothing was paid on the policies, but the transaction was a purchase merely of Tinkham's claims, then the claims were properly allowed in full by the commissioners, assuming that the policies were worthless.

We think the transaction was, *primâ facie*, a payment of the policies and not a purchase merely. If it was merely a purchase, Tinkham abandoned his claim on the policies, and surrendered them to the companies. They might have received the policies and held them as Tinkham did, as security. In that event they would hardly be justified in canceling them except upon an agreement with other parties interested. The fact that they did close the account

on the books, thus practically canceling the policies, indicates a payment: If not a payment the transaction operates as a fraud on Brown, or the estate, to the extent of the value of the policies. Being disputed claims they were reasonably worth what the companies could be induced to pay on them. That they were worth something for that purpose is probable. It cannot be presumed that Tinkham and the companies conspired together thus to defraud Brown or his creditors.

On the other hand, it is reasonably certain that the companies regarded the transaction as a payment of something on the policies, otherwise we must absurdly assume that they were willing to buy a large claim against an insolvent estate, paying therefor in cash nearly its nominal value.

Whatever was paid on the policies, Brown's creditors have a right to know, that they may in some way have the benefit of it; and it is incumbent on the claimant to show it, that it may be deducted from the notes and the balance only allowed. He has failed to show that they paid less than the full amount; we must assume therefore that the full amount was paid; indeed that is the fair import of the finding. That left at the time an apparent balance of about $800 that the assignment conveyed to Visscher. If that was not all that they expected, we think under the circumstances it is all the law can give them.

The Superior Court is advised to render judgment rejecting the account, $386.24, and also the amount of insurance paid on the notes, $6,000, and allow only the balance with interest.

In this opinion the other judges concurred.